```
                                                              FILED
         IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TEXAS        2015 OCT 14  PM 2: 37
                     AUSTIN DIVISION
```

JO ANN GROSSKOPF and RYAN GROSSKOPF,
                    Plaintiffs,

-vs-                                              Case No. A-14-CA-801-SS

CHRYSLER GROUP LLC, CHRYSLER
COMPANY, CHRYSLER LLC, and CHRYSLER
CORPORATION,
                    Defendants.

_____

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Chrysler Group LLC and Chrysler Company's Amended Motion for Full and Final Summary Judgment [#17], Plaintiff Jo Ann Grosskopf and Ryan Grosskopf's Response in Opposition [#21] thereto, and Defendants' Reply [#24] thereto, as well as Defendants' Unopposed Motion for Extension of Time to File Reply [#22].[1] Having considered the documents, the file as a whole, and the governing law, the Court enters the following opinion and orders GRANTING Defendants' motion for summary judgment.

### Background

This case involves a choice-of-law issue. Plaintiffs brought this product-liability suit against Defendants for injuries Mrs. Grosskopf sustained in a motor-vehicle crash while driving a 2000 Plymouth Neon (the Vehicle). Notice Removal [#1-3] Ex. A (Orig. Pet.) ¶ 12. On July 16, 2012,

---

[1] Although Defendants submitted their reply eight days late without the Court's permission, the Court now GRANTS Defendants' Unopposed Motion for Extension of Time to File Reply [#22].

Plaintiff Jo Ann Grosskopf was traveling northbound on an Interstate 35 frontage road in Kyle, Texas when a southbound driver failed to yield to Mrs. Grosskopf as she exited the highway. *Id.* ¶ 14. Upon impact, the driver's side airbag failed to deploy, which, according to Plaintiffs, caused Mrs. Grosskopf's substantial injuries. *Id.* ¶¶ 18, 19.

The material facts are not in dispute. DaimlerChrysler Corporation was responsible for the design, manufacture and testing of Plaintiffs' vehicle. Am. Mot. Summ. J. [#17-3] Ex. J ¶ 3. Chrysler Group LLC, now known as FCA US LLC, is the successor-in-interest to DaimlerChrysler Corporation.[2] Am. Mot. Summ. J. [#17] at 3 n.1. FCA US LLC is headquartered in Auburn Hills, Michigan. Mot. Summ. J. [#11-2] Ex. A (Certificate of Vehicle Origin) at 1. Plaintiffs concede the Vehicle was "assembled" in Belvidere, Illinois. Resp. [#21] at 3. On February 19, 1999, DaimlerChrysler Motors Company, LLC sold the Vehicle to Royal Oaks Chrysler–Jeep, Inc. in St. Peters, Missouri. Certificate of Vehicle Origin at 1. It was later acquired by the Grosskopfs. Resp. [#21] at 3.

Plaintiffs claim Defendants are liable for the allegedly defective Vehicle under theories of strict liability, breach of express warranty, breach of implied warranty of merchantability, and negligence.[3] *See* Orig. Pet. ¶¶ 21–58. Plaintiffs originally filed suit on July 11, 2014 in the 428th

---

[2] Defendants explain DaimlerChrysler Corporation was the predecessor to Chrysler LLC, which filed for bankruptcy on April 30, 2009. Am. Mot. Summ. J. [#17] at 3 n.1. Pursuant to the Bankruptcy Court's order, Chrysler Group LLC "assumed certain responsibilities for defending products that Chrysler LLC had designed and manufactured for accidents occurring after June 10, 2009." *Id.*

[3] In its amended motion for summary judgment, Defendants argue Plaintiffs' claims against Chrysler LLC and Chrysler Corporation must be dismissed, because Plaintiffs failed to serve these two entities within the deadline set forth under Rule 4(m) of the Federal Rules of Civil Procedure. Am. Mot. Summ. J. [#17] at 3 n.2; FED. R. CIV. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). In their amended petition, Plaintiffs contend that both Chrysler LLC and Chrysler Corporation were served. Notice Removal [#1-6] Ex. D (First Am. Orig. Pet.) ¶¶ 4, 5. However, by completely failing to acknowledge Defendants' argument in their response, Plaintiffs have not shown there is a genuine issue precluding summary judgment.

Judicial District Court of Hays County, Texas. *Id.* at 1. On August 21, 2014, Defendants removed this case to the Western District of Texas based on diversity of citizenship between Chrysler Group LLC and Plaintiffs. *Id.* [#1] at 1. Defendants previously filed a motion for summary judgment on February 16, 2015, which this Court denied without prejudice. Mot. Summ. J. [#11]; Order of Mar. 6, 2015 [#13]. On July 27, 2015, Defendants filed an amended motion for summary judgment, arguing Texas law governs this suit.[4] Am. Mot. Summ. J. [#17] at 1–2. If Texas law applies. the state's 15-year statute of repose forecloses Plaintiffs' product-liability suit against Defendants. In their response, however, Plaintiffs insist Michigan law controls, which has no statute of repose and would permit Plaintiffs' suit to proceed. Resp. [#21] at 4.

## Analysis

I.   **Legal Standard—Summary Judgment**

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).

---

Moreover, notwithstanding Plaintiffs' contentions to the contrary, the only evidence in the record indicates Chrysler LLC and Chrysler Corporation were not served. Notice Removal [#1-8] Ex. F (State Court Docket) at 1. To the extent an exhibit contradicts a plaintiff's contention in the complaint, the exhibit controls. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). Without proper service of process, this Court lacks personal jurisdiction over these defendants. *J.O. Alvarez, Inc. v. Rainbow Textiles, Inc.*, 168 F.R.D. 201, 203 (S.D. Tex. 1996) ("Valid service of process is required before a court can assert personal jurisdiction over a defendant."). Accordingly, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' suit against Chrysler LLC and Chrysler Corporation.

[4] Defendants also argue Plaintiffs' claim against Chrysler Company should be dismissed because it did not design, manufacture, or market the Vehicle. Am. Mot. Summ. J. [#17] at 1–2. Plaintiffs concede Defendants' motion for summary judgment as to Chrysler Company. Resp. [#21] at 3. Accordingly, the Court GRANTS Defendants' summary judgment motion on all claims brought against Chrysler Company. In the alternative, this Court would still grant summary judgment as to Chrysler Company, because it finds Texas's 15-year statute of repose forecloses all of Plaintiffs' claims.

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. Id. If the

nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.    Application

In moving for summary judgment, Defendants argue Texas law should apply, since Plaintiffs reside in Texas and the injury occurred in Texas. Am. Mot. Summ. J. [#17] at 11. Plaintiffs, on the other hand, insist Michigan law should apply, because Defendants' principal place of business is in Michigan. Resp. [#21] at 9. There is no dispute that Texas and Michigan law conflict.[5] Under Texas law, a plaintiff must bring a product-liability suit within 15 years of the date of sale of the product. TEX. CIV. PRAC. & REM. CODE § 16.012(a)(2). This statute of repose applies to any product-liability action against a manufacturer, regardless of whether the plaintiff's claims are based on strict liability, negligence, or breach of express or implied warranty. *Id.* Michigan, in contrast, has no such statute of repose. *See Frankenmuth Mut. Ins. Co. v. Marlette Homes, Inc.*, 573 N.W.2d 611, 613–14 (Mich. 1998) (agreeing with the lower court's statement that "allowing manufacturers . . . to claim the defense of the statute of repose would run counter to Michigan's product liability laws"). Moreover, the parties agree Plaintiffs' claims are barred if Texas's statute of repose applies, because suit was filed more than 15 years after Defendants sold the Vehicle. Resp. [#21] at 4. Accordingly, the sole issue before the Court is whether Texas's statute of repose applies, thus barring Plaintiffs' product-liability claims.

---

[5] Because neither party contends the substantive law of Illinois or Missouri controls, the Court's choice-of-law analysis is limited to whether Texas or Michigan law applies.

This Court applies Texas choice-of-law rules. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) ("[A] federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, here Texas."). Texas courts apply the "most significant relationship" test set forth under Sections 6 and 145 of the Restatement (Second) of Conflicts of Laws.[6] *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). Under this test, the law of the state with the most significant relationship to the particular substantive issue controls. *Id.* "Section 6 sets out the general principles by which the more specific rules are to be applied," and in turn, "Section 145 lists factual matters to be considered when applying the principles of Section 6 to a tort case." *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979).

A.   **Section 145**

Under Section 145, the court considers: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) (1971).

---

[6] The "most significant relationship" test generally applies to tort claims, but courts applying Texas law have also applied it to breach-of-warranty claims stemming from "the same allegedly tortious conduct" giving rise to a plaintiff's tort claims. *See, e.g., Beatty v. Isle of Capri Casino, Inc.*, 234 F. Supp. 2d 651, 655 (E.D. Tex. 2002) (applying Texas law). However, to the extent Texas courts would analyze Plaintiffs' warranty and tort claims separately (which Plaintiffs do not assert), the result would be the same. Choice-of-law issues in contractual disputes are governed by the "most significant relationship" test set forth under Sections 6 and 188 of the Restatement (Second) of Conflicts. *Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735 (Tex. 1997). When the parties have not previously contracted for their choice of law, the relevant contacts to consider under Section 188 are: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971). Here, the first and second factors are not relevant, because Plaintiffs admit "[t]here is and was no contractual relationship between the Grosskopfs and any Chrysler entity[.]" Resp. [#12] at 11. Moreover, the fifth factor does not aid the Court in deciding which state's law to apply. *See infra* Section II.A.3. Nevertheless, the third and fourth factors favor the application of Texas law, because Plaintiffs resided in Texas, the Vehicle was registered and insured in Texas, and Mrs. Grosskopf was injured in Texas. *See Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 681 (Tex. 2004) ("[T]he location of performance and the location of the subject matter of the contract would be the place where the computer is used[.]").

1. **Place of Injury**

The place where the injury occurred is an "important factor" in deciding which state's law applies. *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 957 (5th Cir. 1992) (applying Texas law); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2) cmt. e (1971) ("In the case of personal injuries . . . , the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law."). There is no dispute that Mrs. Grosskopf was injured near Kyle, Texas. Orig. Pet. ¶¶ 14, 17. However, Plaintiffs argue this factor militates against the application of Texas law, because Mrs. Grosskopf's injuries in Texas were merely fortuitous. Resp. [#21] at 7. Specifically, Plaintiffs maintain Defendant could not have reasonably foreseen this injury taking placing in Texas, since the Vehicle was originally sold in Missouri. *Id.*

However, Plaintiffs were not merely passing through Texas; rather, they were residents of Texas and the Vehicle was registered in Texas. *See* Am. Mot. Summ. J. [#17-4] Ex. K (Certified Police Report) at 3. As a result, it was not fortuitous that Mrs. Grosskopf was injured in Texas, because she lived in Texas and it was unlikely she would have been injured in any other place. *See, e.g., Sulak v. Am. Eurocopter Corp.*, 901 F. Supp. 2d 834, 843 (N.D. Tex. 2012) (indicating the place of injury may be fortuitous in aeronautical crashes, where neither party resided in that location, but ultimately concluding under Texas choice-of-law rules that this factor was relevant because the plaintiff lived and worked in the place of injury); *Black v. Toys R US-Del., Inc.*, No. 4:08 CV 3315, 2010 WL 4702344, at *10 (S.D. Tex. Nov. 10, 2010) (applying Texas choice-of-law rules and stating, "it was not fortuitous that [plaintiff] was injured in California because she lived in California

and was very unlikely to have been injured in any other place"); *Crisman v. Cooper Indus.*, 748 S.W.2d 273, 277–78 (Tex. App.—Dallas 1988, writ denied) (concluding Texas law applied because a defective trailer was used only in Florida and injuries could only have occurred in Florida); *but see Sico N. Am., Inc. v. Willis*, No. 14-08-00158-CV, 2009 WL 3365856, at *4 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.) (concluding the place of injury was fortuitous when the defendant sold its products only to merchandise dealers and had no direct connection to end-users).

Moreover, contrary to Plaintiffs' assertions, the issue is not whether Defendant foresaw this particular vehicle entering the state of Texas, but whether Defendant foresaw such an injury taking place in Texas. *See Black*, 2010 WL 4702344, at *10 ("[T]he fact that the particular Bumbo Seat that injured [plaintiff] was purchased in North Carolina does not make the prospect of Bumbo Seat[] injuries in California unforeseeable[,]" because the defendants distributed and sold Bumbo Seats nationwide). As Plaintiffs admit, "Plymouth Neons are sold nationwide," including in Texas. Resp. [#21] at 7; Orig. Pet. ¶ 7 (stating Defendants "[d]o or did business in the State of Texas" and "sell, ship, or provide[] . . . goods or services to buyers located in the State of Texas"). Although the Vehicle originally entered the stream of commerce in Missouri, Defendants surely foresaw that individuals in Texas could be injured by Plymouth Neons they distributed and sold in Texas. Because Plaintiffs' injuries in Texas were not fortuitous, this factor favors the application of Texas law.

2. **Place of Conduct Causing Injury**

The conduct in issue for Plaintiffs' product-liability claims is Defendants' design, manufacture, and marketing of the Vehicle. *See* Notice Removal [#1-6] Ex. D. For all of its claims, Plaintiffs argue the place where the harmful conduct occurred is Defendants' headquarters in

Michigan where the Vehicle was "designed, manufactured, and tested."[7] Am. Mot. Summ. J. [#17-3] Ex. J ¶ 3; Resp. [#21] at 9. However, under Texas law, the place of injury-causing conduct for Plaintiffs' defective marketing claim is where the product was used. *See Sulak*, 901 F. Supp. 2d at 843 ("[T]he failure to warn would have arisen in Hawaii because that is where the helicopter was operated."). Because Plaintiffs indisputably used the Vehicle in Texas, the place of conduct causing injury from Defendants' failure to warn Plaintiffs is Texas.

For Plaintiffs' defective design and manufacturing claims, the place of injury-causing conduct is where the product was designed, manufactured, and placed in the stream of commerce. *See Crisman*, 748 S.W.2d at 277–78. However, neither party has submitted evidence establishing where the Vehicle was designed. *See* Resp. [#21] at 9 (simply arguing Defendants had overall responsibility for the Vehicle's design and Defendants are headquartered in Michigan); *but see also* Am. Mot. Summ. J. [#17] at 13, 16 (failing to dispute the Vehicle was designed in Michigan). Under Texas law, "where . . . there is no evidence in the record as to the place of design, this factor is simply to no effect." *Huddy*, 953 F.2d at 957. Otherwise, to accord weight to the defendant's headquarters, simply because the Vehicle's design was subject to final approval there, would amount to "nothing more than double-counting the manufacturer's principal place of business." *Id.*

Even assuming Plaintiffs have established the Vehicle was designed in Michigan, this alone does not establish Michigan law applies; instead, courts must also consider where the product was

---

[7] Plaintiffs admit the Vehicle was "assembled" in Belvidere, Illinois, but still maintain the Vehicle was manufactured in Michigan. Resp. [#21] at 8–9. To be clear, Plaintiffs do not expressly argue that the component parts were manufactured in Michigan and the car was simply put together in Illinois. Instead, Plaintiffs appear to be arguing that the Vehicle was manufactured in Michigan because Defendants' principal place of business is in Michigan and Defendants were ultimately responsible for manufacturing the Vehicle in Illinois. *Id.* at 3. However, Plaintiffs have provided no support for this argument, which essentially collapses the second and third inquiries under Section 145 by changing the meaning of "manufacture" to "principal place of business." Based on the evidence before the Court, the Court finds the Vehicle was manufactured in Illinois.

manufactured and where it entered the steam of commerce. See *Crisman*, 748 S.W.2d at 277 (stating that even in a defective design case, the "mere design . . . of a defective product is not actionable. To invoke the doctrine of strict liability in tort, the product producing injury or damages must enter the stream of commerce."). Here, the Vehicle was manufactured in Illinois[8] and entered the stream of commerce in Missouri where it was sold to a dealership. Am. Mot. Summ. J. [#17] at 14; *see also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 315 (5th Cir. 2000) ("[E]ach gun entered the stream of commerce in the state where it was shipped to be sold."). Accordingly, neither the place of manufacture nor the place where the product entered the stream of commerce manifestly point to one state.

"Texas courts have not based their choice of law upon the manufacturer's principal place of business where the allegedly defective product was not manufactured, designed, or placed into the stream of commerce in that state." *Huddy*, 953 F.2d at 958. Because the Vehicle was not manufactured or placed in the stream of commerce in Michigan, the second factor does not aid the Court in determining whether Michigan or Texas law controls.

3.      **Domicile, Residence, Nationality, Place of Incorporation, and Place of Business**

An analysis of the third factor similarly reveals no one state predominates. According to the Fifth Circuit, a party's residence for choice-of-law purposes is established at the time of injury. *Huddy*, 953 F.2d at 957. Plaintiffs resided in Texas when Mrs. Grosskopf was injured, and thus Texas is their residence for choice-of-law purposes. Orig. Pet. ¶ 1. Defendants are incorporated in Delaware with their principal place of business in Michigan. *Id.* ¶ 2. Given the geographically scattered nature of the parties, this factor carries little weight. *See Black*, 2010 WL 4702344, at *14

---

[8] *See supra* n.7.

(reaching a similar conclusion because plaintiffs resided in California and defendant was a Delaware corporation with its principal place of business in New Jersey).

4.     **Place Where Relationship is Centered**

Under the fourth factor, the Court considers "the place where the relationship, if any, between the parties is centered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (1971). However, where there is no pre-existing contractual relationship between the parties, as in a tort action like this one, the place where the relationship is centered is duplicative of the place of injury. See Denman by Denman v. Snapper Div., 131 F.3d 546, 549–50 (5th Cir. 1998) (analyzing Sections 6 and 145 in applying Mississippi choice-of-law rules). In this case, the only relationship Plaintiffs have with Defendants is a single, indirect transaction. That is, Chrysler sold the Vehicle to a dealership in Missouri, and Plaintiffs later acquired it. A plaintiff's mere contact with a defendant's product does not constitute the type of relationship Section 145 contemplates. See Crisman, 748 S.W.2d at 278 (holding the fourth prong of the Section 145 test inapplicable to a product-liability suit "because the opposing parties had no relationship between them prior to the accident"). Indeed, Section 145 acknowledges the possibility there may be no relationship between the parties by using the phrase "if any." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (1971). Accordingly, this analysis does not aid the Court in deciding whether Texas or Michigan law applies.

Under Section 145's four-factor test, only the first factor contributes to the Court's choice-of-law determination, and it points to the application of Texas law. Nevertheless, the Court is mindful that "the 'most significant relationship' analysis does not turn on the number of contacts with one state, but . . . on the qualitative nature of those contacts as affected by the policy factors set out in

[S]ection 6 of the Restatement." *Crisman*, 748 S.W.2d at 276. Accordingly, the Court now turns to the general choice-of-law principles outlined under Section 6.

**B.    Section 6**

The two most pertinent choice-of-law principles in this case are (1) the relevant policies of the forum state and (2) the relevant policies of other interested states.[9]

**1.    Texas's Interests**

Plaintiffs insist Texas has no interest in applying its statute of repose to cut off a claim by resident plaintiffs against Michigan defendants. The ultimate inquiry here is whether there are relevant Texas policies demonstrating a significant relationship to this product-liability suit. *See Crisman*, 748 S.W.2d at 279. The Court concludes there are.

Asking only whether Texas has an interest in product-liability suits brought by resident plaintiffs, the answer is clearly yes. As the Fifth Circuit has noted, "[t]he Texas legislature and courts have developed an almost paternalistic interest in the protection of consumers and the regulation of the conduct of manufacturers that have business operations in the state." *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir. 1990). At the same time, by promulgating a statute

---

[9] The remaining principles include the needs of the interstate system, the protection of justified expectations, the basic policies underlying the particular field of law, certainty, predictability, and uniformity of result, and the ease of the determination and application of the law to be applied. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971). However, they are of little consequence to the Court's determination of what law to apply. For instance, as to the parties' justified expectations, relevant case law indicates Defendants could have reasonably expected to defend against a product-liability suit in either Michigan (their principal place of business) or Texas (where their products are distributed). *See Mahne v. Ford Motor Co.*, 900 F.2d 83, 88 (6th Cir. 1990) ("[D]efendants cannot argue that applying Michigan law would defeat their expectations since the individual defendants reside there and defendant Ford Motor Company has its headquarters in that state."); *Burleson v. Liggett Grp. Inc.*, 111 F. Supp. 2d 825, 830 (E.D. Tex. 2000) (applying Texas law and stating "[a] product manufacturer distributing his products in Texas to Texas residents would expect Texas law to apply to the sale and product"). Moreover, in the context of a tort claim, where the parties have not previously contracted for the applicable law, "the factors of the justified expectations of the parties and of certainty, predictability, and uniformity of result are of lesser importance." *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 314 (Tex. App.—Texarkana 2004, no pet.) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2) cmt. b (1971)).

of repose, the Texas legislature evinced a specific policy concern for protecting manufacturers against stale product-liability suits. Indeed, the Texas statute of repose was designed to "reduce the number of lawsuits filed in Texas" and "boost[] the state's economy and business climate while still providing more than adequate protection to consumers." Am. Mot. Summ. J. [#17-6] Ex. M (Senate Rep.) at 4. It is undisputed Chrysler does business in Texas. *See* Orig. Pet. ¶ 7 (listing Chrysler's numerous economic ties to Texas to establish Defendants' "continuous, systematic, and substantial contacts with the State of Texas" for personal jurisdiction purposes). Although neither party has submitted evidence detailing Defendants' exact economic activities in Texas, it is clearly in Texas's economic interest to encourage manufacturers like Chrysler to conduct business in Texas. *See, e.g., Burleson v. Liggett Grp., Inc.*, 111 F. Supp. 2d 825, 829 (E.D. Tex. 2000) ("Texas has interest in limiting (what its legislature believed to be) frivolous suits and in providing some measure of repose for sellers and manufacturers of products[.]"); *see also Farrell v. Ford Motor Co.*, 501 N.W.2d 567, 571–72 (Mich. Ct. App. 1993) (concluding North Carolina law applied because "North Carolina has a substantial economic interest in affording manufacturers who do business in North Carolina the benefit of its statute of repose").

In *Crisman*, the Texas Court of Appeals held Florida had the most significant relationship with the plaintiff's product-liability suit against a non-resident defendant, even though recognizing Florida's interest in the suit meant Florida's statute of repose foreclosed the plaintiff's claims. 748 S.W.2d at 279. The Texas court reasoned Florida's statute of repose was enacted specifically in regard to products, and as a result, "Florida continues to have an interest in preventing stale claims and fostering certainty and finality concerning liability for those products where the products are in the stream of commerce of Florida." *Id.* While Texas, like Florida, has an interest in regulating the

vehicles operating on its roads, it also has an interest in fostering finality in product-liability cases. In light of *Crisman*, the relevant policies of Texas, as the forum state, favor applying Texas law.[10]

## 2. Michigan's Interests

Plaintiffs argue Michigan has a compelling interest in promoting the responsibility of corporations headquartered within the state's boundaries, even if a company's product was not manufactured there and did not enter the stream of commerce there. Under Michigan's choice-of-law framework, Michigan courts recognize a presumption in favor of applying Michigan law unless a rational reason to do otherwise exists.[11] *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). This presumption may be overcome by another state's interests when Michigan is merely the situs of Defendants' headquarters. *See, e.g.*, *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 698 (6th Cir. 2013); *Farrell*, 501 N.W.2d at 571–72 (concluding North Carolina's statute of repose applied to bar plaintiffs' claim, stating "Michigan has no interest in affording greater rights of tort recovery to a North Carolina resident than those afforded by North Carolina"); *Hall v. Gen'l Motors Corp.*, 582 N.W.2d 866, 871 (Mich. Ct. App. 1998) (reaching the same conclusion).

---

[10] The Sixth Circuit reached the opposite conclusion in *Mahne v. Ford Motor Co.*, 900 F.2d 83, 88 (1990). There, the court refused to apply Florida's statute of repose, because "the Florida statute does not benefit plaintiff, a Florida resident, under the circumstances of this case since the statute would bar her action against a nonresident defendant whose own state law, the law of Michigan, affords no similar protection for a manufacturer." *Id.* Even if this Court was persuaded by this logic, it is constrained by the well-established rule that district courts sitting in diversity apply the choice-of-law rules of the state in which they sit. *Mayo*, 354 F.3d at 403. On the matter of whether a state has a significant relationship with a product-liability claim, even though application of that state's statute of repose would bar the plaintiff's claim, the Texas Court of Appeals has spoken. *See Crisman*, 748 S.W.2d at 279.

[11] Plaintiffs argue Michigan's choice-of-law rules are irrelevant to this Court's consideration of Michigan's interests in the instant case. However, because these choice-of-law cases discuss Michigan's interests in applying its law to analogous product-liability suits, the Court finds this line of cases persuasive.

In *Standard Fire Insurance Co.*, plaintiff-insurance companies, as subrogees to a Tennessee resident, sued a corporation headquartered in Michigan after the Tennessee resident suffered injuries allegedly caused by his defective vehicle; the injuries occurred in Tennessee and the vehicle was registered and insured in Tennessee. 723 F.3d at 697. In applying Michigan's choice-of-law rules, the Sixth Circuit recognized "Tennessee had an obvious and substantial interest in applying its statute of repose to shield [even foreign] manufacturers . . . from open-ended liability claims." *Id.* In comparison, Michigan's interests were minimal, because Michigan was merely the forum state and the location of the defendant's headquarters. *Id.* at 698. Because the court concluded Tennessee's interests outweighed Michigan's minimal interests, Tennessee's statute of repose applied to foreclose the plaintiffs' action. *Id.* at 699. As in *Standard Fire Insurance Co.*, Michigan's interests in the instant product-liability case are minimal, because its sole connection to the suit is that Defendants are headquartered there.[12]

Moreover, unlike Texas law, "Michigan law recognizes the place where the injury was sustained as the place of the wrong; the place where the last event necessary to create liability occurred." *Id.* Thus, even if Plaintiffs had established the Vehicle was designed, manufactured, and marketed in Michigan, Michigan's interests in the current liability suit would remain minimal, since under Michigan law, the relevant conduct causing injury occurred in Texas.

As discussed above, Texas has a substantial economic interest in extending the protection of its statute of repose to manufacturers who do business in Texas. *See supra* Section II.B.1. In comparison, Michigan has an attenuated interest in applying its law to protect out-of-state residents

---

[12] Even if the Court takes as true Plaintiffs' contention that the Vehicle was designed in Michigan, at least one Michigan court concluded this contention would not alter its determination that Michigan's interests are minimal in a product-liability suit such as this. *See Farrell*, 501 N.W.2d at 572.

against the mostly out-of-state activities of a Delaware corporation headquartered in Michigan. Accordingly, the two most relevant policies under Section 6 favor the application of Texas law.

## Conclusion

The parties agree Plaintiffs' claims are barred if Texas's statute of repose applies. Because the Court finds Texas has the most significant relationship to this particular substantive issue, Texas law, and specifically Texas's statute of repose, applies to foreclose Plaintiffs' product-liability claims against Defendants.

Accordingly,

IT IS ORDERED that Defendants' Unopposed Motion for Extension of Time to File Reply [#22] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Jo Ann Grosskopf and Ryan Grosskopf's suit against Defendant Chrysler LLC and Chrysler Corporation is DISMISSED WITHOUT PREJUDICE; and

IT IS FINALLY ORDERED that Defendants' Amended Motion for Full and Final Summary Judgment [#17] is GRANTED.

SIGNED this the 14th day of October 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE